CONTINENTAL CASUALTY COMPANY, as subrogee of Virginia Polytechnic Institute and State University, Plaintiff,

v.

TOWN OF BLACKSBURG, Defendant.

Civ. A. No. 92–0854–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

June 1, 1993.

William B. Hopkins, Jr., Martin, Hopkins & Lemon, P.C., Roanoke, VA, and Elliott R. Feldman and Steven L. Smith, Cozen & O'Connor, Philadelphia, PA, for plaintiff.

David B. Hart, Gary E. Tegenkamp, Peter Duane Vieth, Wooten & Hart, Roanoke, VA, and Richard Boucher Kaufman, Blacksburg, VA, for defendant.

## MEMORANDUM OPINION

TURK, District Judge.

### I

Continental Casualty Company (Continental) filed the present action against the Town of Blacksburg (Blacksburg) as subrogee of Virginia Polytechnic Institute and State University (VPI) seeking recovery for property damage losses paid and to be paid to its insured, VPI, as a result of a storm event and subsequent flooding. Continental is an Illinois corporation with its principal place of business located within Illinois. The Town of Blacksburg is a municipality and/or other governmental unit formed under and existing pursuant to the laws of the Commonwealth of Virginia. The amount in controversy is in excess of $50,000.00. Jurisdiction is based on diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

### II

Plaintiff, at all times material hereto, provided property insurance coverage for real and personal property, and loss of use thereof, owned and occupied by VPI at its campus located in Blacksburg, Virginia.[1] Plaintiff alleges that rainwater which fell on May 14, 1992, was not properly drained through Blacksburg's rainwater storm sewer system, causing the rainwater to rise to the surface and flow onto VPI's campus. The plaintiff alleges that Blacksburg was negligent in connection with the planning, design, engineering, construction, maintenance, service and/or repair of its storm drainage system and that such conduct constituted legal nuisance.

Blacksburg filed a Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure stating that Continental's causes of action based on negligence and nuisance are barred by Virginia Code Section 15.1–31. Continental filed a motion and memorandum in opposition. The Court heard oral arguments on the Motion and denied the same, with leave granted to the parties to file a motion for summary judgment with supporting evidence. Subsequently, Blacksburg filed a motion for summary judgment with supporting affidavits. Continental has filed a brief in opposition. The Court held a hearing on April 26, 1993. Thereafter Continental filed an Amended Complaint containing the same allegations of negligence and nuisance as were contained in its original complaint, however, adding a third claim for alleged "taking" under Va. Code § 15.1–31. Having given the parties time to brief the issue, the Court held an additional hearing and the matter is now ready for resolution. The sole issue to be decided by the Court at this time is whether Va.Code § 15.1–31 applies to the negligence and nuisance counts.

### III

Under Fed.R.Civ.P. 56, the court may grant judgment as a matter of law if there is no genuine dispute of material fact, and the movant is entitled to a judgment as a matter of law. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972 (4th Cir.1990). All reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to the same as a matter of law where the party opposing the motion has failed to make sufficient showing of an essential element of his case on which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Further, the party opposing a properly supported motion for summary judgment may not rest ·

---

1. The complaint alleges that the plaintiff was subrogated to the rights of VPI as its insurer.

upon mere allegations in his pleading but must set forth specific facts that show there is a genuine issue for trial. *Rivanna Trawlers Unltd. v. Thompson Trawlers,* 840 F.2d 236, 240 (4th Cir.1988).

## IV

Virginia Code Section 15.1–31 immunizes local governments from actions based on certain functions related to structures or devices, including, but not limited to, dams, levees, or seawalls, or the performance of dredging operations, "the purpose of which is to prevent tidal erosion, flooding or inundation" of a city, county or town, or part thereof. Va.Code § 15.1–31. The statute goes on to say that "[t]he design, construction, performance, maintenance and operation of any of such works is hereby declared to be a proper governmental function for a public purpose." *Id.* Furthermore, the statute prohibits the "right of any person, firm, corporation, association or political subdivision to bring, and prohibits the bringing of, any action at law or suit in equity against any county, city or town because of, or arising out of, the design, maintenance, performance, operation or existence of such works ..." *Id.* Blacksburg argues that the statute applies and that therefore Continental's claims for negligence and nuisance are barred.

█ Blacksburg filed the affidavit of Adele P. Schirmer, Director of Public Works for the Town of Blacksburg, in support of its motion for summary judgment. Mrs. Schirmer in her affidavit states that Blacksburg's storm drainage system consists

of structures and devices such as storm drainage pipes, improved water courses, dams, levees, drop inlets, holding ponds, curbs, and gutters, among other things, the purpose of which is to prevent the flooding or inundation of persons or property in Blacksburg. Mrs. Schirmer went on to state that Blacksburg storm drainage system additionally serves to confine and control a natural body of water commonly known as Stroubles Creek in addition to providing storm drainage. Accordingly, since Blacksburg's storm drainage system consists of structures,[2] the purpose of which is to prevent flooding or inundation,[3] it comes within the purview of Va.Code § 15.1–31.[4]

█ It is not disputed that the storm event of May 14, 1992, overwhelmed the storm drainage system of Blacksburg and as a result rainwater ran over the surface and flooded the VPI campus. The plaintiff alleges that the flooding of VPI's campus was due to Blacksburg's negligence in connection with the planning, design, engineering, construction, maintenance, service and/or repair of its storm drainage system and that such conduct constituted legal nuisance. However, Va. Code § 15.1–31 expressly prohibits Continental from bringing any action at law or in equity against Blacksburg because of, or arising out of, the design, maintenance, performance, operation, or existence of Blacksburg's storm drainage system. Accordingly, Va.Code § 15.1–31 necessarily bars Continental's claims of negligence and nuisance because they clearly arise out of the design, maintenance, performance, operation,

2. Continental has submitted no evidence to dispute Mrs. Schirmer's description of the structures that comprise the storm drainage system. To the contrary, Continental in its Memorandum of Law in Opposition states that "[p]laintiff accepts Mrs. Schirmer's sworn statement that the town's system includes dams and levees."

3. Continental in support of its motion in opposition submitted the affidavit of J.B. Suptin who states that "[t]he town of Blacksburg maintains its storm water/rainwater management/drainage system to drain rainfall and impound and control freshwater, including Stroubles Creek, within the town of Blacksburg so as to prevent flooding or inundation in the town of Blacksburg and in the surrounding territory, including the campus of Virginia Tech." Furthermore, Continental's as-

sertion that the statute does not encompass works affecting non-tidal waters is without merit, because the statute makes an explicit reference to fresh water. Accordingly, the statute includes flooding or inundation caused by rainwater, fresh-water or sea-water regardless of whether it is tidal or non-tidal.

4. A storm drainage system, or any other works intended to prevent flooding or inundation, will necessarily cause temporary overland flooding when the capacity of the system is exceeded as it was here. Since every works describe in the statute potentially could flood and thereby emit waters into areas beyond the contemplated structures or devices, the statute would be meaningless if it did not intend to immunize local governments from suits over certain flooding damage.

and/or existence of Blacksburg's storm drainage system.

For the foregoing reasons, the defendant's motion for summary judgment as to plaintiff's claims of negligence and nuisance will be granted.

An appropriate Order will be entered this date.

## ORDER

In accordance with the memorandum opinion filed this day it is

## ADJUDGED AND ORDERED

that defendant's motion for summary judgment is **GRANTED** as to plaintiff's negligence and nuisance claims; leaving only the "taking" claim in the case.